Chant Yedalian, State Bar No. 222325
(chant@chant.mobi)
CHANT & COMPANY
A Professional Law Corporation
1010 N. Central Ave.
Glendale, CA 91202
Phone: 877.574.7100
Fax: 877.574.9411

Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SADISHA PERERA and AMBER SCHRIVER on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PACIFIC FOODS OF OREGON, INC. (also d/b/a Pacific Natural Foods), and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 3:14-cv-02074-JD <br><br> **FIRST AMENDED COMPLAINT** <br> **CLASS ACTION** <br><br> [(1) Violations of California's Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*, (2) Violations California's False Advertising Law, California Business & Professions Code § 17500 *et seq.*, (3) Violations of California's Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.,* and (4) Quasi-Contract/ Unjust Enrichment] |

## DEMAND FOR JURY TRIAL

Plaintiffs, by their counsel of record, bring this action on their own behalves and on behalf of all others similarly situated, and allege the following upon personal knowledge, or where there is not personal knowledge, upon information and belief:

## INTRODUCTION

1.  Food and beverage manufacturers have sought to capitalize on the fast-growing market for natural products, which is now a multi-billion dollar industry.

2.  Unfortunately, not all manufacturers truthfully represent their products.

3.  Instead, some manufactures seek to capture a share of the market by touting their products as "all natural" when in fact that is not true.

4.  Defendant Pacific Foods Of Oregon, Inc., which also does business as Pacific Natural Foods ("Pacific Natural Foods"), is an example of a manufacturer who has sought to exploit the market for natural products by representing that its products are "all natural."

5.  Pacific Natural Foods manufactures several food products, including a line of non-dairy beverage products which include the Hemp Non-Dairy Beverage Unsweetened (Vanilla), Hemp Non-Dairy Beverage (Vanilla), Hazelnut Non-Dairy Beverage (Original), Hazelnut Non-Dairy Beverage (Chocolate), and Ultra Soy Non-Dairy Beverage (Vanilla) products.  Pacific Natural Foods prominently labels these products as "all natural" when in fact they contain non-natural ingredients, including artificial or synthetic ingredients.  Moreover, Pacific Natural Foods claimed that some of its products contained "evaporated cane juice" when in fact its products did not contain any such juice and instead contain sugars or syrups.

6.  This lawsuit seeks redress on behalf of a nationwide class of consumers who purchased Pacific Natural Foods Products[1] which claimed to be "all natural" and/or claimed to contain "evaporated cane juice."

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 class members, the

---

[1] The phrase "Pacific Natural Foods Products" as used in this First Amended Complaint includes the Purchased Products (described in paragraph 16, below) and the Substantially Similar Products (described in paragraphs 73 through 77, below).

1  proposed class contains at least one class member who is a citizen of a State
2  different from any defendant, and the matter in controversy exceeds the sum of
3  $5,000,000.

4      8.     This Court has personal jurisdiction over Defendants because each
5  conducts business in California, intentionally avails itself of the markets and
6  benefits of California through its marketing and sales of the products at issue in
7  California so as to render the exercise of jurisdiction by this Court consistent with
8  traditional notions of fair play and substantial justice, and a substantial part of the
9  acts and omissions giving rise to the claims occurred within California.

10     9.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and
11 (c) in that Defendants reside in this judicial district, Defendants have done and
12 continue to do business, and intentionally avail themselves of the markets within
13 this district, and this is a class action case in which a substantial part of the acts and
14 omissions giving rise to the claims occurred within this judicial district.

15

16                              **PARTIES**

17     10.    Plaintiff, Sadisha Perera, is and at all times relevant hereto was a
18 resident of the State of California.

19     11.    Plaintiff, Amber Schriver, is and at all times relevant hereto was a
20 resident of the State of California.

21     12.    Defendant Pacific Foods Of Oregon, Inc., which also does business as
22 Pacific Natural Foods, is a corporation organized and existing under the laws of the
23 State of Oregon.   Defendant manufactures, markets, and sells its products
24 throughout California and the United States.   Defendant is a leading producer of
25 retail food products, including the products at issue herein.   Defendant sells its food
26 products to consumers through grocery and other retail stores throughout the United
27 States.

28

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

13.     At all times mentioned in this Complaint, Defendants and each of them were the agents, employees, joint venturer, and or partners of each other and were acting within the course and scope of such agency, employment, joint venturer and or partnership relationship and or each of the Defendants ratified and or authorized the conduct of each of the other Defendants.

14.     Plaintiffs do not know the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs are informed and believe that each of the Doe defendants was in some manner legally responsible for the wrongful and unlawful conduct and harm alleged herein.  Plaintiffs will amend this First Amended Complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations.

15.     Defendant Pacific Foods Of Oregon, Inc. and Does 1 through 10 are collectively referred to as Defendants.

## FACTUAL ALLEGATIONS CONCERNING
## PACIFIC NATURAL FOODS PRODUCTS

16.     Within three years from the date of filing this action, Plaintiff Sadisha Perera purchased some of Defendants' Pacific Natural Foods Products, including the following products which are collectively referred to as the "Purchased Products": Hemp Non-Dairy Beverage Unsweetened (Vanilla), Hemp Non-Dairy Beverage (Vanilla), Hazelnut Non-Dairy Beverage (Original), Hazelnut Non-Dairy Beverage (Chocolate), and Ultra Soy Non-Dairy Beverage (Vanilla).[2]

---

[2] At the times that Plaintiff Sadisha Perera purchased the Hazelnut Non-Dairy Beverage (Chocolate) and Ultra Soy Non-Dairy Beverage (Vanilla) products, the respective labels of these products claimed that each product contained "evaporated cane juice."  After the filing of this action and Defendants' receipt and notice of the Complaint in the action, Plaintiffs are informed and believe that Defendants removed the "evaporated cane juice" representation from the labels of these products in response to this action.

17.     The Hemp Non-Dairy Beverage Unsweetened (Vanilla) product purchased by Plaintiff Sadisha Perera has the following labels:



FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

18.    The label of the Hemp Non-Dairy Beverage Unsweetened (Vanilla) product includes the following representations on the product's package:

**"all natural"** (front of package);

**"all natural"** (side of package);

**"all natural"** (back of package);

**"natural nutrition"** (back of package);

**"Pacific Natural Foods"** (side of package);

**"good starts here"** (side of package);

**"When nature provides such delicious ingredients to work with, the key is to keep it simple"** (side of package); and

**"Ingredients from farmers and suppliers who share our high standards of quality"** (side of package).

19.    The ingredients on the side label of the Hemp Non-Dairy Beverage Unsweetened (Vanilla) product's package states as follows:

"**INGREDIENTS:** HEMP NUT BASE (FILTERED WATER, WHOLE HEMP NUT [SHELLED HEMP SEED]), NATURAL VANILLA FLAVOR WITH OTHER NATURAL FLAVORS, CALCIUM PHOSPHATE, DISODIUM PHOSPHATE, GUM ARABIC, XANTHAN GUM, CARRAGEENAN, VITAMIN A PALMITATE, VITAMIN D2, RIBOFLAVIN (B2), VITAMIN B12."

20.    Defendants unlawfully misbranded and falsely, misleadingly and deceptively represented the Hemp Non-Dairy Beverage Unsweetened (Vanilla) product as "all natural" despite that it contains non-natural ingredients, including the following artificial or synthetic ingredients: Calcium Phosphate, Disodium Phosphate, Xanthan Gum, Vitamin A Palmitate, Vitamin D2, Riboflavin, and Vitamin B12."[3]

21.    Within three years from the date of filing this First Amended Complaint, Plaintiff Amber Schriver purchased some of Defendants' Pacific Natural

---

[3] Plaintiffs reserve the right to amend these allegations if additional investigation or discovery reveals other non-natural ingredients.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

1  Foods Products, including the following products: Hazelnut Non-Dairy Beverage
2  (Chocolate), Hazelnut Non-Dairy Beverage (Original), and Hemp Non-Dairy
3  Beverage Unsweetened (Vanilla).

4      22.  The Hazelnut Non-Dairy Beverage (Chocolate) product purchased by
5  Plaintiff Amber Schriver has the following labels:

6
7
8
9
10
11
12
13
14




15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

23.   The label of the Hazelnut Non-Dairy Beverage (Chocolate) product includes the following representations on the product's package:

**"all natural"** (front of package);

**"all natural"** (back of package);

**"pacificnaturalfoods"** (side of package);

**"good starts here"** (side of package);

**"From our backyard to your kitchen"** (back of package);

**"When nature provides such delicious ingredients to work with, the key is to keep it simple"** (side of package); and

**"Ingredients from farmers and suppliers who share our high standards of quality"** (side of package);.

24.   The ingredients on the side label of the Hazelnut Non-Dairy Beverage (Chocolate) product's package states as follows:

"**INGREDIENTS:** ROASTED HAZELNUT BASE (WATER, GROUND ROASTED HAZELNUTS), BROWN RICE SWEETENER (WATER, BROWN RICE), DRIED CANE SYRUP, COCOA POWDER, TRICALCIUM PHOSPHATE, CHOCOLATE, POTASSIUM CITRATE, SEA SALT, NATURAL FLAVOR, CARRAGEENAN, SUNFLOWER LECITHIN, RIBOFLAVIN (B2), VITAMIN A PALMITATE, VITAMIN D2."[4]

25.   Defendants unlawfully misbranded and falsely, misleadingly and deceptively represented the Hazelnut Non-Dairy Beverage (Chocolate) product as "all natural" despite that it contains non-natural ingredients, including the following

---

[4] As explained in footnote 2, above, at the times that Plaintiff Sadisha Perera purchased the Hazelnut Non-Dairy Beverage (Chocolate) product, the labels of this product claimed that the product contained "evaporated cane juice." After the filing of this action and Defendants' receipt and notice of the Complaint in the action, Plaintiffs are informed and believe that Defendants removed the "evaporated cane juice" representation from the labels of this product in response to this action. Thus, the Hazelnut Non-Dairy Beverage (Chocolate) shown in paragraph 22 and ingredients described in paragraph 24 do not state "evaporated cane juice" as an ingredient.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

1  artificial or synthetic ingredients: Cocoa Powder, Tricalcium Phosphate, Potassium
2  Citrate, Riboflavin (B2),Vitamin A Palmitate, and Vitamin D2.[5]

3      26.    The Purchased Products are all part of the same line of Defendants'
4  products and use the same type of packaging but are each a different flavor.

5      27.    Like the Hemp Non-Dairy Beverage Unsweetened (Vanilla) and
6  Hazelnut Non-Dairy Beverage (Chocolate) product, each of the other Purchased
7  Products makes the same "All Natural" label misrepresentations on the front label of
8  each respective product.  An image of the front label of each of the other Purchased
9  Products is attached hereto as Exhibits 1-3.  Exhibits 1-3 correspond to these other
10  Purchased Products as follows:

11      • Hemp Non-Dairy Beverage (Vanilla) [**Exhibit 1**];

12      • Hazelnut Non-Dairy Beverage (Original) [**Exhibit 2**]; and

13      • Ultra Soy Non-Dairy Beverage (Vanilla) [**Exhibit 3**][6];

14      28.    Defendants unlawfully misbranded and falsely, misleadingly and
15  deceptively represented the Hemp Non-Dairy Beverage (Vanilla) product as "all
16  natural" despite that it contains non-natural ingredients, including the following
17  artificial or synthetic ingredients: Tricalcium Phosphate, Disodium Phosphate,
18  Xanthan Gum, Vitamin A Palmitate, Vitamin D2, Riboflavin (B2), and Vitamin
19  B12.[7]

20      29.    Defendants unlawfully misbranded and falsely, misleadingly and
21  deceptively represented the Hazelnut Non-Dairy Beverage (Original) product as "all

22  _____
23  [5] Plaintiffs reserve the right to amend these allegations if additional investigation or
discovery reveals other non-natural ingredients.

24  [6] As explained in footnote 2, above, at the times that Plaintiff Sadisha Perera
purchased the Ultra Soy Non-Dairy Beverage (Vanilla) product, the labels of this
25  product claimed that the product contained "evaporated cane juice."  After the filing
of this action and Defendants' receipt and notice of the Complaint in the action,
26  Plaintiffs are informed and believe that Defendants removed the "evaporated cane
juice" representation from the labels of this product in response to this action.  Thus,
27  the attached Exhibit 3 does not state "evaporated cane juice" as an ingredient.

28  [7] Plaintiffs reserve the right to amend these allegations if additional investigation or
discovery reveals other non-natural ingredients.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

natural" despite that it contains non-natural ingredients, including the following artificial or synthetic ingredients: Tricalcium Phosphate, Riboflavin (B2), Vitamin A Palmitate, and Vitamin D2.[8]

30.    Defendants unlawfully misbranded and falsely, misleadingly and deceptively represented the Ultra Soy Non-Dairy Beverage (Vanilla) product as "all natural" despite that it contains non-natural ingredients, including the following artificial or synthetic ingredients: Tricalcium Phosphate, Riboflavin (B2), Vitamin D2, Vitamin B6 (Pyridoxine Hcl), Vitamin A (Palmitate), and Vitamin B12."[9]

31.    The size and placement of ingredients, which appear in smaller print and on the side of each of the Pacific Natural Foods Products' packaging, are in stark contrast to the conspicuous "all natural" representations, which appear in larger print and in more prominent locations on the packaging.

32.    Reasonable consumers, including Plaintiffs, do not have the specialized knowledge necessary to identify ingredients in Pacific Natural Foods Products as being inconsistent with the "all natural" and "juice" claims.

33.    A claim that a product is "all natural" is material to a reasonable consumer.

34.    A reasonable consumer would expect that a product labeled as "all natural" does not contain any artificial, synthetic or extensively processed ingredients.

35.    This expectation of a reasonable consumer is consistent with the common use of the word "natural" as well as with the views of the federal government and its agencies.

---

[8] Plaintiffs reserve the right to amend these allegations if additional investigation or discovery reveals other non-natural ingredients.
[9] Plaintiffs reserve the right to amend these allegations if additional investigation or discovery reveals other non-natural ingredients.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

36.    The Food and Drug Administration ("FDA") has repeatedly stated its policy to restrict the use of the term "natural" in connection with added color, synthetic substances and flavors addressed in 21 C.F.R. § 101.22.

37.    21 C.F.R. § 101.22 distinguishes between artificial versus natural foods, spices, flavorings, colorings, and preservatives on food labels.  Any coloring or preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources.

38.    The Food and Drug Administration ("FDA") has repeatedly affirmed its policy through guidelines that define the appropriate boundaries for using the term "natural."  According to the FDA:

> "The agency will maintain its current policy … not to restrict the use of the term 'natural' except for added color, synthetic substances, and flavors as provided in § 101.22. Additionally, the agency will maintain its policy … regarding the use of 'natural' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food.  Further … the agency will continue to distinguish between natural and artificial flavors as outlined in § 101.22."  58 Federal Register 2302, 2407 (Jan. 6, 1993).

39.    The FDA Compliance Policy Guide Sec. 587.100 further provides that:
> "The use of the words 'food color added,' 'natural color,' or similar words containing the term 'food' or 'natural' may be erroneously interpreted to mean the color is a naturally occurring constituent in the food.  Since all added colors result in an artificially colored food, we would object to the declaration of any added color as 'food' or 'natural.'"

40.    Additionally, some of Defendants' Pacific Natural Foods Products contained ingredients from otherwise natural sources that have been extensively processed.  As an example, "evaporated cane juice" is the end product of sugar cane being extensively processed.  Some manufacturers of so-called "evaporated cane juice" add synthetic substances such as Phosphoric Acid and/or Calcium Hydroxide

1    to extract cane syrup prior to evaporation.  Phosphoric Acid and Calcium Hydroxide
2    are both synthetic ingredients.

3        41.    Moreover, Defendants' Pacific Natural Foods Products which claim to
4    contain "evaporated cane juice" are misbranded, as well as false and misleading,
5    because they do not actually contain "juice" but instead contain sugar or syrup
6    derived from sugar.

7        42.    21 C.F.R. § 120.1 defines "juice" as "the aqueous liquid expressed or
8    extracted from one or more fruits or vegetables…."

9        43.    21 C.F.R. § 168.130, requires that "the liquid food derived … of the
10   juice of sugarcane … or by solution in water of sugarcane concentrate made from
11   such juice" shall go by the name "cane sirup" or "sugar cane sirup."  Alternatively,
12   the word "sirup" may be spelled "syrup."  *Ibid.*

13       44.    Federal regulations instruct that ingredients must be described by their
14   common or usual names, 21 C.F.R. § 101.4(a)(1), and not by a name that is
15   "confusingly similar to the name of any other food that is not reasonably
16   encompassed within the same name," 21 C.F.R. § 102.5(a), (d).

17       45.    The FDA has indicated that the use of the term "cane juice" is false and
18   misleading, since it is not actually "juice" but sugar or syrup derived from sugar.
19   See FDA Guidance for Industry: Ingredients Declared as Evaporated Cane Juice;
20   Draft Guidance, October 2009.

21       46.    In its guidance to the food industry, the FDA explained, among other
22   things, as follows:

23           "[T]he term 'evaporated cane juice' has started to appear as an
24           ingredient on food labels, most commonly to declare the presence of
25           sweeteners derived from sugar cane syrup.  However, FDA's current
             policy is that sweeteners derived from sugar cane syrup should not be
26           declared as 'evaporated cane juice' because that term falsely suggests
             that the sweeteners are juice [].
27
             'Juice' is defined by 21 CFR 120.1(a) as 'the aqueous liquid
28           expressed or extracted from one or more fruits or vegetables, purees

of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree….'

As provided in 21 CFR 101.4(a)(1), 'Ingredients required to be declared on the label or labeling of a food … shall be listed by common or usual name….'  The common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(d)).  The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be 'confusingly similar to the name of any other food that is not reasonably encompassed within the same name' (21 CFR 102.5(a)).

Sugar cane products exist in many different forms, ranging from raw sugars and syrups to refined sugar and molasses.  These products are differentiated by their moisture, molasses, and sucrose content as well as by crystal size and any special treatments (e.g., treatment with sulfur).  Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled 'syrup') (21 CFR 168.130).  Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar)….

The intent of this draft guidance is to advise the regulated industry of FDA's view that the term 'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup.  Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'

Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as 'evaporated cane juice.'  FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5."  See FDA Guidance for Industry: Ingredients Declared as Evaporated Cane Juice; Draft Guidance, October 2009.

47.    Because Defendants' Pacific Natural Foods Products, which claimed to contain "evaporated cane juice" are false and misleading, and misbranded, they had no value as a matter of law.

48.    Defendants engaged in an extensive and long-term advertising campaign labeling and otherwise marketing their Pacific Natural Foods Products, including all of the Purchased Products, as "all natural" when, in fact, they are not "all natural."

49.    Defendants and each of them were well aware that Calcium Phosphate, Tricalcium Phosphate (also known as Calcium Phosphate, tribasic), Disodium Phosphate, Xanthan Gum, Vitamin A Palmitate, Vitamin D2, Riboflavin (B2), Vitamin B12, Cocoa Powder, Potassium Citrate, and Vitamin B6 (Pyridoxine Hcl) are not "all natural."  Among other facts that were known to Defendants, Defendants knew about the facts set forth in paragraphs 50 through 61, below.

50.    **Calcium Phosphate** is a synthetic substance and is identified as a synthetic substance by the Code of Federal Regulations at 7 C.F.R. § 205.605(b).

51.    **Tricalcium Phosphate** is a synonym for Calcium Phosphate, tribasic. It has an International Numbering System for Food Additives ("INS") number of INS No. 341(iii).  It consists of a variable mixture of calcium phosphates with an approximate chemical composition of $10CaO \cdot 3P2O5 \cdot H2O$.  The Code of Federal Regulations at 7 C.F.R. § 205.605(b), identifies Calcium Phosphate, tribasic (also known as Tricalcium Phosphate) as a synthetic substance.

52.    **Disodium Phosphate** (as with all Sodium Phosphates) is a synthetic substance and is identified as a synthetic substance by the Code of Federal Regulations, at 7 C.F.R. § 205.605(b).

53.    **Xanthan Gum** is a synthetic substance and is identified as a synthetic substance by the Code of Federal Regulations, at 7 C.F.R. § 205.605(b).  "The additive [Xanthan Gum] is a polysaccharide gum derived from Xanthomonas campestris by a pure-culture fermentation process and purified by recovery with

isopropyl alcohol.  It contains D-glucose, D-mannose, and D-glucuronic acid as the dominant hexose units and is manufactured as the sodium, potassium, or calcium salt." 21 C.F.R. § 172.695(a).  Further, Isopropyl Alcohol, which as stated above, is used in the manufacturing process of Xanthan Gum, is itself a synthetic substance. 21 C.F.R. § 172.515(b).

54.   **Vitamin A Palmitate** "Vitamin A palmitate (retinyl palmitate; CAS Reg. No. 79-81-2) is the palmitate ester of retinol. It is prepared by esterifying retinol with palmitic acid." 21 C.F.R. § 184.1930(a)(3).

55.   **Vitamin D2**, which is a non-natural and irradiated substance, is added to foods in either a crystalline form or a resin form.  21 C.F.R. § 184.1950(a)(1) and (a)(3).  "Crystalline vitamin D2 (C28H44O, CAS Reg. No. 50-14-6), also known as ergocalciferol, is the chemical 9,10-seco(5Z,7E,22E)-5,7,10(19),22-ergostatetraen-3-ol.  The ingredient is produced by ultraviolet irradiation of ergosterol isolated from yeast and related fungi and is purified by crystallization."  21 C.F.R. § 184.1950(a)(1).   "Vitamin D2 resin [is] the concentrated form[] of irradiated ergosterol (D2) [] that are separated from the reacting materials in [the Crystalline vitamin D2 process set forth above]." 21 C.F.R. § 184.1950(a)(3).

56.   **Riboflavin (B2)** "(C17H20N4O6, CAS Reg. No. 83-88-5) occurs as yellow to orange-yellow needles that are crystallized from 2N acetic acid, alcohol, water, or pyridine.  It may be prepared by chemical synthesis, biosynthetically by the organism Eremothecium ashbyii, or isolated from natural sources." 21 C.F.R. § 184.1695(a).  Riboflavin may also be used as a food coloring.  21 C.F.R. § 73.450.  On information and belief, Defendants used synthetic Riboflavin in their Pacific Natural Foods Products.

57.   **Vitamin B12** "Vitamin B12, also known as cyanocobalamin (C63H88CoN14O14P, CAS Reg. No. 68-0919-099), is produced commercially from cultures of Streptomyces griseus." 21 C.F.R. § 184.1945(a).

58.   **Cocoa Powder,** which the Defendants used in their Pacific Natural Foods Products, is of the synthetic, non-natural type based upon Plaintiffs information and belief.   Unsweetened cocoa powder is typically rendered in two forms—unalkalized cocoa, or Dutch-process/alkalized cocoa.   Unalkalized cocoa results from pressing cocoa beans with no additional modifications.   The resulting natural cocoa powder is usually a light brown color.   It is somewhat acidic, with a strong chocolate flavor.   In contrast, Dutch-process/alkalized cocoa is not "all natural" and comes from cocoa nibs and/or chocolate liquor that has been treated with alkali solutions in order to raise the pH (to make it less acidic).   This alkalizing (also known as dutching) process is used to modify and manipulate the color, taste, and functionality of cocoa powder.   Alkalization can be used to create a range of dark brown and red-brown colors that change the appearances of some food products that contain cocoa powders.   While alkalization can also reduce some of the sourness and bitterness associated with natural cocoa powders, and can also change the solubility of cocoa powder in certain beverage applications, it is a non-natural, synthetic process that also destroys many of the flavonols (water-soluble pigments that are believed to contribute health benefits).

59.   **Potassium Citrate** is a synthetic substance and is identified as a synthetic substance by the Code of Federal Regulations, at 7 C.F.R. § 205.605(b). "Potassium citrate ($C_6H_5K_3O_7 \cdot H_2O$, CAS Reg. No. 006100-0905-096) is the potassium salt of citric acid.   It is prepared by neutralizing citric acid with potassium hydroxide or potassium carbonate.   It occurs as transparent crystals or a white granular powder, is odorless and deliquescent, and contains one mole of water per mole of potassium citrate." 21 C.F.R. § 184.1625(a).

60.   **Vitamin B6 (Pyridoxine Hcl),** pyridoxine hydrochloride is a synthetic substance. "Pyridoxine hydrochloride ($C_8H_{11}NO_3 \cdot HCl$, CAS Reg. No. 58-56-0) is the chemical 3-hydroxy-4,5-dihydroxymethy-2-methylpyridine hydrochloride that is prepared by chemical synthesis." 21 C.F.R. § 184.1676(a).

61.     The Code of Federal Regulations defines the term "synthetic" as "A substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes."  7 C.F.R. § 205.2; *Rojas v. General Mills, Inc.*, No. 12-cv-05099-WHO, 2014 WL 1248017 *1 (N.D. Cal. March 26, 2014).

62.     Plaintiff Sadisha Perera purchased the Purchased Products in reliance on Defendants' representations and omissions on the Purchased Products' labels that the products were "all natural."

63.     Plaintiff Sadisha Perera reasonably and justifiably relied on the "all natural" representations on the Purchased Products, and based her decision to purchase such products in substantial part on such representations.

64.     Plaintiff Sadisha Perera also reasonably assumed that the Pacific Natural Foods Products were not misbranded and were legal to offer for sale and to purchase.

65.     Plaintiff Sadisha Perera was misled and deceived by Defendants' misbranded products and label representations and would not have purchased the Purchased Products in the absence of the foregoing "all natural" representations and omissions.

66.     Plaintiff Sadisha Perera relied on Defendants' misbranded labels and false, misleading and deceptive labeling claims and omissions and suffered injury in fact and a loss of money with each purchase of Defendants' Pacific Natural Foods Products.

67.     Plaintiff Amber Schriver purchased Defendants' Hazelnut Non-Dairy Beverage (Chocolate), Hazelnut Non-Dairy Beverage (Original), and Hemp Non-Dairy Beverage Unsweetened (Vanilla) products in reliance on Defendants'

1   representations and omissions on the products' labels that the products were "all
2   natural."

3       68.    Plaintiff Amber Schriver reasonably and justifiably relied on the "all
4   natural" representations on the Hazelnut Non-Dairy Beverage (Chocolate), Hazelnut
5   Non-Dairy Beverage (Original), and Hemp Non-Dairy Beverage Unsweetened
6   (Vanilla) products, and based her decision to purchase such products in substantial
7   part on such representations.

8       69.    Plaintiff Amber Schriver also reasonably assumed that the Pacific
9   Natural Foods Products were not misbranded and were legal to offer for sale and to
10  purchase.

11      70.    Plaintiff Amber Schriver was misled and deceived by Defendants'
12  misbranded products and label representations and would not have purchased the
13  Hazelnut Non-Dairy Beverage (Chocolate), Hazelnut Non-Dairy Beverage
14  (Original), and Hemp Non-Dairy Beverage Unsweetened (Vanilla) products, in the
15  absence of the foregoing "all natural" representations and omissions.

16      71.    Plaintiff Amber Schriver relied on Defendants' misbranded labels and
17  false, misleading and deceptive labeling claims and omissions and suffered injury in
18  fact and a loss of money with each purchase of Defendants' Pacific Natural Foods
19  Products.

20      72.    As a result of Defendants' misbranding and false, misleading and
21  deceptive labeling claims and omissions, consumers such as Plaintiffs did not
22  receive the benefit of their bargain when they purchased Pacific Natural Foods
23  Products.  They each paid money for a product(s) that is misbranded (and therefore
24  has no value as a matter of law), and is not what it claims to be or what they
25  bargained for.  They also paid a premium for the Pacific Natural Foods Products and
26  lost the opportunity to purchase and consume other, truly all natural foods.

27      73.    In addition to the Purchased Products, Defendants also misbranded and
28  misrepresented    other    substantially    similar    Pacific    Natural    Foods    products

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

("Substantially Similar Products"). Each of the Substantially Similar Products makes the same label misrepresentations and violates the same California Sherman Food, Drug, And Cosmetic Law, California Health & Safety Code § 109875 *et seq.*, laws as the Purchased Products. The Purchased Products and the Substantially Similar Products are also all part of the same line of Defendants' products and use the same type of packaging but are each a different flavor.

74. The Substantially Similar Products include the following Pacific Natural Foods products labeled as "all natural:"

- Hemp Non-Dairy Beverage (Original);
- Hemp Non-Dairy Beverage Unsweetened (Original);
- Hemp Non-Dairy Beverage (Chocolate);
- Rice Non-Dairy Beverage (Original);
- Rice Non-Dairy Beverage (Vanilla); and
- Ultra Soy Non-Dairy Beverage (Original).

75. Like the Purchased Products, each of the Substantially Similar Products identified in paragraph 74 makes the same "all natural" label misrepresentations on the front label of each respective product. An image of the front label of each of these Substantially Similar Products with the "all natural" misrepresentation on the front label of each respective product is attached hereto as Exhibits 4-9 as follows:

- Hemp Non-Dairy Beverage (Original) [**Exhibit 4**];
- Hemp Non-Dairy Beverage Unsweetened (Original) [**Exhibit 5**];
- Hemp Non-Dairy Beverage (Chocolate) [**Exhibit 6**];
- Rice Non-Dairy Beverage (Original) [**Exhibit 7**];
- Rice Non-Dairy Beverage (Vanilla) [**Exhibit 8**]; and
- Ultra Soy Non-Dairy Beverage (Original) [**Exhibit 9**].

76. Each of the Substantially Similar Products with the "all natural" label misrepresentations also contains non-natural ingredients found in the Purchased Products. Each of the Substantially Similar Products with the "all natural" label

misrepresentations is identified below with a corresponding bracket which states which of the common non-natural ingredients it shares with the Purchased Products:

- Hemp Non-Dairy Beverage (Original) [contains Tricalcium Phosphate, Disodium Phosphate, Xanthan Gum, Vitamin A Palmitate, Vitamin D2, Riboflavin (B2), and Vitamin B12] [**Exhibit 4**];

- Hemp Non-Dairy Beverage Unsweetened (Original) [contains Tricalcium Phosphate, Disodium Phosphate, Xanthan Gum, Vitamin A Palmitate, Vitamin D2, Riboflavin (B2), and Vitamin B12] [**Exhibit 5**];

- Hemp Non-Dairy Beverage (Chocolate) [contains Calcium Phosphate, Cocoa (Processed with Alkali), Tricalcium Phosphate, Disodium Phosphate, Xanthan Gum, Vitamin A Palmitate, Vitamin D2, Riboflavin (B2), and Vitamin B12] [**Exhibit 6**];

- Rice Non-Dairy Beverage (Original) [contains Tricalcium Phosphate, Xanthan Gum, Vitamin A Palmitate, and Vitamin D2] [**Exhibit 7**];

- Rice Non-Dairy Beverage (Vanilla) [contains Tricalcium Phosphate, Xanthan Gum, Vitamin A Palmitate, and Vitamin D2] [**Exhibit 8**]; and

- Ultra Soy Non-Dairy Beverage (Original) [contains Tricalcium Phosphate, Riboflavin (B2), Vitamin D2, Vitamin B6 (Pyridoxine Hcl), Vitamin A (Palmitate), and Vitamin B12] [**Exhibit 9**].

77. The Substantially Similar Products include the following Pacific Natural Foods products labeled as containing "evaporated cane juice:"

- Ultra Soy Non-Dairy Beverage (Original);

- Select Soy Non-Dairy Beverage (Original); and

- Select Soy Non-Dairy Beverage (Vanilla). [10]

---

[10] At the time this action was first filed, the respective labels of the Ultra Soy Non-Dairy Beverage (Original), Select Soy Non-Dairy Beverage (Original), and Select Soy Non-Dairy Beverage (Vanilla) products claimed that each of the respective products contained "evaporated cane juice." After the filing of this action and Defendants' receipt and notice of the Complaint in the action, Plaintiffs are informed and believe that Defendants removed the "evaporated cane juice" representation from the labels of these products in response to this action.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

78.    Plaintiffs reserve the right to add additional products to the lists of Substantially Similar Products set forth in paragraphs 73 through 77, above, based upon additional investigation or discovery.

79.    Defendants know that consumers are willing to pay for all natural products.    Defendants advertise the Pacific Natural Foods Products with the intention that consumers rely on the affirmative misrepresentations of fact on their labeling that the products are "all natural."  Further, Defendants' omissions of the material fact that the products include ingredients that are not "all natural," but instead contain artificial, synthetic or extensively processed ingredients, are likely to deceive reasonable consumers.

80.    Defendants know that the Pacific Natural Foods Products, including the Purchased Products and Substantially Similar Products, are misbranded and that their labeling claims and omissions are false, misleading, deceptive, and likely to deceive reasonable consumers.

81.    Yet, Defendants have engaged and continue to engage in their misbranding and with their misrepresentations of fact and omissions of fact in furtherance of their motive to sell and profit from the Pacific Natural Foods Products on the backs and at the expense of consumers and the consuming public.

## CLASS ACTION ALLEGATIONS

82.    Plaintiffs bring this class action on behalf of themselves and all other persons similarly situated pursuant to Rules 23(a) and 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

83.    The class ("Class") which Plaintiffs seek to represent is defined as:

All persons in the United States who, within four years from the date of filing this action, purchased any of the Pacific Natural Foods

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

Products which: (1) was labeled "all natural" and/or (2) contains the ingredient labeled as "evaporated cane juice."[11]

84. Excluded from the Class are Defendants and their directors, officers and employees.

85. <u>Numerosity (Fed. R. Civ. P. 23(a)(1))</u>:  The Class is so numerous that joinder of all individual members in one action would be impracticable.   The disposition of their claims through this class action will benefit both the parties and this Court.

86. Plaintiffs are informed and believe and thereon allege that there are, at a minimum, many thousands, or millions, of members that comprise the Class.

87. Members of the Class may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, first-class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and or appropriate by the Court.

88. <u>Common Questions of Fact and Law (Fed. R. Civ. P. 23(a)(2) and (b)(3))</u>:  There are a well-defined community of interest and common questions of fact and law affecting the members of the Class.

89. The questions of fact and law common to the Class predominate over questions which may affect individual members and include the following:

(a) Whether Defendants' "all natural" representations are unlawful, unfair, deceptive, untrue or misleading;

(b) Whether Defendants' "evaporated cane juice" representations are unlawful, unfair, deceptive, untrue or misleading;

(c) Whether Defendants violated California Business and Professions Code § 17200 *et seq.*;

---

[11] Plaintiffs reserve the right to amend or otherwise modify the Class definition and/or add subclasses.

- 24 -

(d)     Whether   Defendants   violated   California   Business   and Professions Code § 17500 *et seq.*;

(e)     Whether Defendants violated California Civil Code § 1750 *et seq.*;

(f)     Whether   under   the   principles   of   quasi-contract/unjust enrichment, Defendants were unjustly enriched at the expense of Class members; and

(g)     The relief, including injunctive and other equitable relief, to which Plaintiffs and the Class are entitled.

90.     <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>: Plaintiffs' claims are typical of the claims of the entire Class.   Plaintiffs and all Class members each bought one or more of Defendants' products which are at issue in this case.   The claims of Plaintiffs and members of the Class are based on the same legal and remedial theories and arise from the same unlawful conduct.

91.     <u>Adequacy of Representation (Fed. R. Civ. P. 23(a)(4))</u>:   Each of the Plaintiffs is an adequate representative of the Class because each of their interests do not conflict with the interests of the Class which Plaintiffs seek to represent. Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the Class and have no interests antagonistic to the Class.   Plaintiffs have retained counsel who is competent and experienced in the prosecution of class action litigation.

92.     <u>Superiority (Fed. R. Civ. P. 23(b)(3))</u>:   A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class.   While the aggregate damages which may be and if awarded to the Class are likely to be substantial, the actual economic damages suffered by individual members of the Class are likely relatively small.   As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the

wrongs done to them.  The likelihood of individual Class members prosecuting separate claims is remote.  Plaintiffs do not know of any other litigation already commenced by or against any member of the Class concerning Defendants' "all natural" representations at issue in this case.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues.  In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

93.   <u>Injunctive or Declaratory Relief  (Fed. R. Civ. P. 23(b)(2))</u>:  A class action is also appropriate because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

# **FIRST CAUSE OF ACTION**

**For Violation of California's Unfair Competition Law,**

**California Business & Professions Code § 17200 *et seq.***

**(On Behalf of Plaintiffs and the Class as against**

**all Defendants including DOES 1 through 10)**

94.   Plaintiffs hereby incorporate by reference the allegations contained in this First Amended Complaint.

95.   Plaintiffs assert this claim on behalf of themselves and the Class as against Defendants and each of them.

96.   "California's unfair competition law (UCL) (§ 17200 *et seq.*) defines 'unfair competition' to mean and include 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act

prohibited by [the false advertising law (§ 17500 *et seq.*)].'" *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002).

97.    "The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kasky*, 27 Cal.4th at 949.

98.    Defendants have violated the UCL in several of the following ways, each of which are independently actionable:

**Unlawful (Sherman Law Misbranding Violations)**

99.    Defendants' conduct of labeling, advertising and otherwise representing its products as "all natural" and/or containing "evaporated cane juice" is unlawful and constitutes misbranding under the Sherman Food, Drug, And Cosmetic Law, California Health & Safety Code § 109875 *et seq.* (the "Sherman Law").

100.   California's Sherman Law adopts, incorporates – and is identical – to the relevant provisions of the federal Food Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA").[12]

101.   The Sherman Law expressly states that "Any food is misbranded if its labeling is false or misleading in any particular." California Health & Safety Code § 110660.[13]

102.   The Sherman Law also provides that "Any food is misbranded if any word, statement, or other information required pursuant to this part to appear on the label or labeling is not prominently placed upon the label or labeling with conspicuousness, as compared with other words, statements, designs, or devices in the labeling and in terms as to render it likely to be read and understood by the

---

[12] Through the Sherman Law, California has also adopted all federal food labeling regulations as its own: "All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act … shall be the food labeling regulations of this state." California Health & Safety Code § 110100. "'Federal act' means the federal Food, Drug, and Cosmetic Act, as amended (21 U.S.C. Sec. 301 *et seq.*)." California Health & Safety Code § 109930.

[13] Identical to FDCA 21 U.S.C. § 343(a).

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

ordinary individual under customary conditions of purchase and use." California Health & Safety Code § 110705.[14]

103. The Sherman Law expressly states that "Any food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact." California Health & Safety Code § 110740.[15]

104. The Sherman Law also provides that a food is misbranded if its label does not clearly state "the common or usual name of the food" or "the common or usual name of each ingredient." California Health & Safety Code §§ 110720. 110725.[16]

105. Misbranded food is unlawful and has no value as it may not be manufactured, delivered, held, offered for sale, or otherwise received in commerce.

106. "It is unlawful for any person to misbrand any food." California Health & Safety Code § 110765.

107. "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded." California Health & Safety Code § 110760.

108. "It is unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food." California Health & Safety Code § 110770.

109. Defendants manufactured, delivered, held, offered for sale, sold and/or otherwise received into commerce their misbranded products.

110. Defendants sold their misbranded products within California and throughout the United States.

---

[14] Identical to FDCA 21 U.S.C. § 343(f).

[15] Identical to FDCA 21 U.S.C. § 343(k).

[16] Identical to FDCA 21 U.S.C. § 343(g); and 21 C.F.R. § 101.4(a)(1), 21 C.F.R. § 102.5(a), (d).

111. As a result of Defendants' conduct, Plaintiffs and Class members purchased misbranded products which have no value and are not saleable, as a matter of law, and Plaintiffs and Class members suffered injury in fact and lost money or property as a result of Defendants' conduct.

**Unlawful (Other Violations)**

112. In addition to Defendants' misbranding violations set forth above, Defendants have also violated the UCL by violating other laws including, but not limited to, the following:

113. Defendants' conduct violates the advertising prohibitions under the Sherman Law, California Health & Safety Code §§ 110390, 110395, 110398 and 110400.

114. Defendants' conduct violates California's False Advertising Law, California Business & Professions Code § 17500 *et seq.*

115. Defendants' conduct violates California's Consumers Legal Remedies Act., California Civil Code § 1750 *et seq.*

**Unfair**

116. Defendants' conduct is unfair under the UCL because it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and the Class.  Defendants' conduct undermines and violates the spirit and policies underlying the Sherman Law, the False Advertising Law, and the Consumers Legal Remedies Act.  There is no legitimate utility of Defendants' conduct, let alone any that would outweigh the harm to Plaintiffs and the Class.

117. Plaintiffs and Class members did not know and, as reasonable consumers had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

**Fraudulent**

118.  Defendants' conduct is also fraudulent under the UCL because it is likely to deceive reasonable consumers.

**Unfair, Deceptive, Untrue or Misleading Advertising**

119.  As described herein, Defendants' conduct also violates the UCL because the conduct constitutes unfair, deceptive, untrue and/or misleading advertising.

**Relief Sought**

120.  As a result of Defendants' conduct and violations of the UCL, Plaintiffs and Class members suffered injury in fact and lost money or property.

121.  Defendants' conduct is ongoing (at least as to the "all natural" misrepresentations) and, unless restrained, likely to recur.

122.  Plaintiffs, on behalf of themselves and Class members, seek equitable relief requiring Defendants to refund and restore to Plaintiffs and all Class members all monies they paid for the Pacific Natural Foods Products, and injunctive relief prohibiting Defendants from engaging in the misconduct described herein.

**<u>SECOND CAUSE OF ACTION</u>**

**For Violation of California's False Advertising Law,**

**California Business & Professions Code § 17500 *et seq.***

**(On Behalf of Plaintiffs and the Class as against**

**all Defendants including DOES 1 through 10)**

123.  Plaintiffs hereby incorporate by reference the allegations contained in this First Amended Complaint.

124.  Plaintiffs assert this claim on behalf of themselves and the Class as against Defendants and each of them.

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

125.   Both the UCL and California's False Advertising Law prohibit "'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.' [Citation.] Thus, to state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, 'it is necessary only to show that `members of the public are likely to be deceived.'" *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002).

126.   As stated in this First amended Complaint, Defendants publicly disseminated untrue or misleading advertising or intended not to sell Pacific Natural Foods Products as advertised in violation of California Business & Professional Code § 17500 *et seq.*, by, *inter alia*:

(a)   Representing that Pacific Natural Foods Products are "all natural," when they are not; and

(b)   Misrepresenting that Pacific Natural Foods products contain "evaporated cane juice."

127.   Defendants committed such violations of the False Advertising Law with actual knowledge or in the exercise of reasonable care should have known the representations were untrue or misleading.

128.   As a result of Defendants' conduct and violations of the UCL, Plaintiffs and Class members suffered injury in fact and lost money or property.

129.   Defendants' conduct is ongoing (at least as to the "all natural" misrepresentations) and, unless restrained, likely to recur.

130.   Plaintiffs, on behalf of themselves and Class members, seek equitable relief requiring Defendants to refund and restore to Plaintiffs and all Class members all monies they paid for the Pacific Natural Foods Products, and injunctive relief prohibiting Defendants from engaging in the misconduct described herein.

### THIRD CAUSE OF ACTION

**For Violation of California's Consumers Legal Remedies Act,**

**California Civil Code § 1750 *et seq.***

**(On Behalf of Plaintiffs and the Class as against**

**all Defendants including DOES 1 through 10)**

131.   Plaintiffs hereby incorporate by reference the allegations contained in this First Amended Complaint.

132.   Plaintiffs assert this claim on behalf of themselves and the Class as against Defendants and each of them.

133.   Defendants' representations, omissions and conduct have violated, and continue to violate California's Consumers Legal Remedies Act ("CLRA"), because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers, including Plaintiffs and the Class.

134.   Defendants' conduct violates the CLRA, Civil Code § 1770(a)(5) which prohibits "Representing that goods or services have … characteristics, ingredients, uses, benefits, or quantities which they do not have."

135.   Defendants' conduct violates the CLRA, Civil Code § 1770(a)(7) which prohibits "Representing that goods or services are of a particular standard, quality, or grade … if they are of another."

136.   Defendants' conduct violates the CLRA, Civil Code § 1770(a)(9) which prohibits "Advertising goods … with intent not to sell them as advertised."

137.   Defendants' conduct violates the CLRA, Civil Code § 1770(a)(16) which prohibits "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

138.   Defendants' Pacific Natural Foods Products are "goods" within the meaning of Civil Code §§ 1761(a) and 1770.

139.   Plaintiffs and Class members are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770.

140. Each purchase of Defendants' Pacific Natural Foods Products by Plaintiffs and each Class member constitutes a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

141. Defendants' conduct is ongoing (at least as to the "all natural" misrepresentations) and, unless restrained, likely to recur.

142. Plaintiffs, on behalf of themselves and Class members, seek injunctive relief prohibiting Defendants from engaging in the misconduct described herein.

143. The CLRA, Civil Code § 1782(a), states as follows:

"(a)   Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:

(1)   Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.

(2)   Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.

The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California."

144. The CLRA Civil Code § 1782(d) states in pertinent part as follows: "An action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a) [notice requirement]. Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a) [notice requirement], the consumer may amend his or her complaint without leave of court to include a request for damages."

- 33 -

145. Defendant PACIFIC FOODS OF OREGON, INC. has not filed any statement or designation with the California Secretary of State.

146. Defendant PACIFIC FOODS OF OREGON, INC. has not received a certificate of qualification from the California Secretary of State.

147. Defendant PACIFIC FOODS OF OREGON, INC. is not registered with the California Secretary of State.

148. Defendant PACIFIC FOODS OF OREGON, INC. has not publicly disclosed any address as its principal place of business within California.

149. Defendant PACIFIC FOODS OF OREGON, INC. does not have a designated agent for service of process within California.

150. On Behalf of Plaintiff Sadisha Perera and the Class, the Civil Code § 1782(a) notice of PACIFIC FOODS OF OREGON, INC.'s CLRA violations, and demand, was served on PACIFIC FOODS OF OREGON, INC. on June 30, 2014. As authorized by Civil Code § 1782(a), on June 30, 2014, Plaintiff's counsel served PACIFIC FOODS OF OREGON, INC. with the CLRA notice and demand by certified mail return receipt requested.

151. PACIFIC FOODS OF OREGON, INC. has failed to provide appropriate relief for its violations of the CLRA within 30 days after receipt of the CLRA notice and demand on behalf of Plaintiff Sadisha Perera and the Class.   Accordingly, pursuant to Sections 1780 and 1782 of the CLRA, Plaintiff Sadisha Perera, is entitled to recover, on behalf of Plaintiff Sadisha Perera and the Class, actual damages, punitive damages, attorney's fees and costs, equitable relief, including injunctive relief and restitution, and any other relief the Court deems proper for PACIFIC FOODS OF OREGON, INC.'s CLRA violations.

152. On Behalf of Plaintiff Amber Schriver and the Class, the Civil Code § 1782(a) notice of PACIFIC FOODS OF OREGON, INC.'s CLRA violations, and demand, was served on PACIFIC FOODS OF OREGON, INC. on August 8, 2015. As authorized by Civil Code § 1782(a), on August 8, 2015, Plaintiff's counsel

1  served PACIFIC FOODS OF OREGON, INC. with the CLRA notice and demand

2  by certified mail return receipt requested.

3       153. PACIFIC FOODS OF OREGON, INC. has failed to provide appropriate

4  relief for its violations of the CLRA within 30 days after receipt of the CLRA notice

5  and demand on behalf of Plaintiff Amber Schriver and the Class.  Accordingly,

6  pursuant to Sections 1780 and 1782 of the CLRA, Plaintiff Amber Schriver, is

7  entitled to recover, on behalf of Plaintiff Amber Schriver and the Class, actual

8  damages, punitive damages, attorney's fees and costs, equitable relief, including

9  injunctive relief and restitution, and any other relief the Court deems proper for

10 PACIFIC FOODS OF OREGON, INC.'s CLRA violations.

11      154.  Defendants' violations of the CLRA were willful with a conscious

12 disregard of the rights of Plaintiffs and the Class, and Defendants' conduct was also

13 oppressive and fraudulent, thus supporting an award of punitive damages.

14      155.  Consequently, Plaintiffs and the Class are entitled to actual and

15 punitive damages against Defendants for their violations of the CLRA.  In addition,

16 pursuant to Civil Code § 1780, Plaintiffs and the Class are entitled to equitable relief

17 requiring Defendants to refund and restore to Plaintiffs and all Class members all

18 monies they paid for the Pacific Natural Foods Products, and injunctive relief

19 prohibiting Defendants from engaging in the misconduct described herein.  Pursuant

20 to Civil Code § 1780, Plaintiffs and the Class are also entitled to attorney's fees and

21 costs, and any other relief the Court deems proper, for PACIFIC FOODS OF

22 OREGON, INC.'s CLRA violations.

23

24 //

25

26 //

27

28 //

1

2

3

4

## **FOURTH CAUSE OF ACTION**

### **Quasi-Contract/Unjust Enrichment**

### **(On Behalf of Plaintiffs and the Class as against**

### **all Defendants including DOES 1 through 10)**

5   156.   Plaintiffs hereby incorporate by reference the allegations contained in

6   this First Amended Complaint.

7   157.   Plaintiffs assert this claim on behalf of themselves and the Class as

8   against Defendants and each of them.

9   158.   As described in this First Amended Complaint, Defendants enticed

10  Plaintiffs and members of the Class to purchase Defendants' Pacific Natural Foods

11  Products through false, misleading and otherwise deceptive labeling, and

12  Defendants were unjustly enriched as a result.

13  159.   As described in this First Amended Complaint, Defendants wrongfully

14  took and/or otherwise extracted monies from Plaintiffs and members of the Class

15  and Defendants have been unjustly enriched at the expense of Plaintiffs and

16  members of the Class, thereby creating a quasi-contractual obligation by Defendants

17  to restore these ill-gotten gains to Plaintiffs and members of the Class.

18  160.   As a direct and proximate result of Defendants' unjust enrichment,

19  Plaintiffs and members of the Class are entitled to restitution and/or disgorgement of

20  Defendants' profits.

21

22

## **PRAYER FOR RELIEF**

23  WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for:

24  1.   An order certifying the Class and appointing Plaintiffs as the

25  representatives of the Class, and appointing counsel of record for Plaintiffs as

26  counsel for the Class;

27  2.   Actual damages to Plaintiffs and all Class members;

28

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
Case No. 3:14-cv-02074-JD

1        3.       Equitable relief requiring Defendants to refund and restore to Plaintiffs

2  and all Class members all monies they paid for the Pacific Natural Foods Products;

3        4.       Restitution and/or disgorgement of Defendants' profits made from

4  Plaintiffs and the Class, in an amount to be proven at trial;

5        5.       An order requiring an accounting for, and imposition of a constructive

6  trust upon, all monies received by Defendants from Plaintiffs and the Class as a

7  result of the false, misleading, deceptive, and/or otherwise wrongful conduct alleged

8  herein;

9        6.       Injunctive relief prohibiting Defendants from engaging in the

10  misconduct described herein;

11        7.       Declaratory relief declaring that Defendants' conduct violates the UCL,

12  FAL and CLRA and that Defendants have been unjustly enriched at the expense of

13  Plaintiffs and members of the Class, thereby creating a quasi-contractual obligation

14  by Defendants to restore these ill-gotten gains to Plaintiffs and members of the

15  Class;

16        8.       Punitive damages against all Defendants;

17        9.       An award of attorney's fees;

18        10.     An award of costs;

19        11.     An award of interest, including prejudgment interest; and

20        12.     For such other and further relief as the Court may deem proper.

21

22

23  DATED:  January 27, 2016     CHANT & COMPANY
                               A Professional Law Corporation

24

25                           By:  /S/  Chant Yedalian

26                                Chant Yedalian
                              Counsel For Plaintiffs

27

28

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs demand a trial by jury on all claims so triable.

3

4

DATED:  January 27, 2016         CHANT & COMPANY
                                                       A Professional Law Corporation

5

6

By:   /S/  Chant Yedalian

7

Chant Yedalian
Counsel For Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 38 -